IN THE UNITED STATES DISTRICT COURT **F I L E D**
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

AUG 2  2007

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

FRED ARBONAISE,

        **Plaintiff,**

v.

        **CIVIL ACTION NO. 5:06cv68**
        **(Judge Stamp)**

**MICHAEL J. ASTRUE,**[1]
**COMMISSIONER OF SOCIAL SECURITY,**
        **Defendant.**

## REPORT AND RECOMMENDATION/OPINION

This is an action for judicial review of the final decision of the defendant Commissioner of the Social Security Administration ("the Commissioner") denying the plaintiff's claim for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act. The matter is awaiting decision on cross Motions for Summary Judgment, and has been referred to the undersigned United States Magistrate Judge for submission of a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

## I. PROCEDURAL HISTORY

The procedural history of this case is fairly unusual. Fred Arbonaise ("Plaintiff") applied for SSI on May 23, 2001.[2] On August 2, 2002, Administrative Law Judge ("ALJ") Jay Levine issued

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure. Michael J. Astrue should be substituted, therefore, for former Commissioner Jo Anne B. Barnhart (or Acting Commissioner Linda L. McMahon [if the caption was changed previously]) as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

[2] According to the record, Plaintiff had filed previous applications in March 1997, March 1998, and September 2000. Those claims were denied initially and upon reconsideration (R. 54).

an unfavorable decision regarding that application. Plaintiff timely filed a Request for Review of that decision with the Appeals Council. While Plaintiff's 2001 claim was pending before the Appeals Council, he filed a new application for SSI on August 16, 2002 (protective filing date), alleging disability since May 8, 1996, due to blood clots in his right leg, arthritis of the knees, and obesity. The claim was also denied at the initial and reconsideration levels. On April 3, 2003, ALJ Levine again presided over an administrative hearing. Plaintiff, represented by counsel, testified on his own behalf, along with Vocational Expert Larry Ostrowski ("VE"). The ALJ issued a written decision on April 22, 2003. At Plaintiff's request the Appeals Council consolidated Plaintiff's two pending claims. On July 22, 2003, the Appeals Council denied Plaintiff's request for review of the consolidated decisions.

**The Prior Court Decision**

On August 4, 2003, Plaintiff filed his Complaint related to the consolidated claims in this Court. (See 1:03cv176, Docket Entry 1). The Commissioner filed her Answer on October 21, 2003. Plaintiff filed his Motion for Summary Judgment on December 19, 2003, and the Commissioner filed her responsive Motion on January 26, 2004. The case was referred to the undersigned United States Magistrate Judge for disposition by Report and Recommendation.

In the earlier Complaint, Plaintiff made three contentions:

1. The ALJ erred by failing to properly consider Plaintiff's mental impairments;

2. The ALJ erred by failing to properly consider the testimony of the vocational expert; and

3. The ALJ erred by failing to apply the proper standard in making his credibility analysis, as is required by Social Security Ruling 96-7p.

2

Defendant responded:

1.  The ALJ properly considered Plaintiff's mental impairments in accordance with the regulations;

2.  Plaintiff is mistaken in his reliance on the VE's testimony in response to his counsel's hypothetical question; and

3.  The ALJ properly evaluated Plaintiff's subjective complaints in accordance with the regulations.

Plaintiff first argued that the ALJ erred by failing to properly consider his mental impairments and by failing to properly consider the testimony of the VE. Defendant contended the ALJ properly considered Plaintiff's mental impairments in accordance with the regulations, and that Plaintiff was mistaken in his reliance on the VE's testimony in response to his counsel's hypothetical question. The undersigned found there was "an internal inconsistency in the ALJ's decision itself that requires remand of this matter."[3]

On October 7, 2002, State agency expert Samuel Goots, Ph.D. completed a Mental RFC opining that Plaintiff would be moderately limited in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods (R. 159-160). On January 13, 2003, State

---

[3]There were no objections filed to the original Report and Recommendation. The undersigned therefore repeats the contentions and findings verbatim from that Report and Recommendation.

agency psychologist James Capage, Ph.D., affirmed Dr. Goots' assessment (R. 160).

On December 10, 2002, State agency expert Fulvio Franyutti submitted a Physical RFC opining that Plaintiff could occasionally lift ten pounds; frequently lift ten pounds; stand and/or walk for two hours in an eight-hour workday; and sit about six hours in an eight-hour workday (R. 178). In addition, Plaintiff would be limited to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and would need to avoid concentrated exposure to temperature extremes, hazards, and fumes, odors, dusts, gases, etc. (R. 179, 181).

At the first administrative hearing, the following colloquy between Plaintiff's counsel ("ATTY"), the VE (Dr. Ostrowski), and the ALJ took place:

ATTY:    Dr. Ostrowski, if you had a hypothetical Claimant that was limited to occasionally lifting ten pounds - - frequently lifting ten pounds, they could stand or walk two hours out of an eight hour work day, they could sit six hours out of an eight-hour workday. All postural activities, such as climbing, [balancing], stooping, kneeling, crouching, crawling are occasional. Avoid concentrated exposure to hot and cold, fumes, odors, dust, gasses, and hazards, such as machinery and heights. On top of those physical limitations, the following mental limitations. The person having the ability to maintain attention and concentration for extended periods is moderately limited. Their ability to perform activities within a schedule, maintained [sic] regular attendance and be punctual within customary tolerances, is also moderately limited. Their ability to sustain an ordinary routine without special supervision was moderately limited. Their ability to work in coordination or proximity to others without being distracted by them is also moderately limited. And the person's ability to complete a normal workday and workweek without interruptions from psychologically based [symptoms], and to perform at a consistent pace without an unreasonable number in length of rest periods is again, moderately limited. Would there be any jobs for such a person?

VE:    I don't believe so, no.

ATTY:    I have no further questions.

ALJ:    Okay, why did you come to that conclusion, Dr. Ostrowski?

VE:    Well the ability to work a workweek, you know, was moderately impaired, it would -

4

- it was a big factor. And the ability to work with others - - near others without being distracted and the concentration, you know, was moderately affected and the difficulty with sustaining a routine was moderately affected. All of those things, you know, in my view, limit an individual in being able to perform jobs as required.

ALJ:          Okay . . . .

(R. 568-569). Significantly, the limitations in the hypothetical asked by Plaintiff's counsel are

identical to the limitations State agency physician Dr. Fulvio Franyutti and State agency

psychologists Dr. Samuel Goots and Dr. James Capage opined Plaintiff had. (*See* R. 159-160, 179,

181).

> 20 CFR § 416.927(f)(2)(I) and (ii) provide as follows:
>
> (I) Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. However, State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled.
>
> (ii) When an administrative law judge considers a finding of a State agency medical or psychological consultant or other program physician or psychologist the administrative law judge will evaluate the evidence using relevant factors in paragraphs (a) through (e) of this section, such as the phsycian's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physicians or psychologists, and any other factors relevant to the weighing of the opinions. Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant of other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

In the prior case, the ALJ discussed the State agency physician's and psychologists' opinions

as follows:

In accordance with the guidelines in Social Security Ruling 96-6p the residual functional capacity assessment completed by the State agency and the findings of fact made by the State agency and other program physicians regarding the nature and severity of the claimant's impairments have been considered to be expert medical opinions of nonexamining sources. On reconsideration the State agency physician assessed the claimant as able to perform work-related activities with pushing, pulling, lifting, and/or carrying up to 10 pounds occasionally and up to 10 pounds frequently; sitting for two hours in a workday, standing and/or walking about six hours during an eight-hour workday;[4] and occasional climbing, balancing, stooping, kneeling, crouching, and/or crawling (Exhibit B8F). <u>This opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence, and there, is entitled to substantial weight.</u>

On reconsideration, the State agency psychologist assessed the claimant as able to perform work-related activities with moderate restrictions in his ability to understand, remember and carry out detailed instruction; in his ability to maintain concentration and attention for extended periods; in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; in his ability to sustain an ordinary routine without special supervision; in his ability to work with or [in] proximity to others without being distracted by them; and in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Exhibit B6F). The psychologist added that the claimant should be capable of understanding, remembering and carrying out simple, routine instructions with initial supportive supervision. <u>This opinion also is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence and, therefore, is entitled to substantial weight.</u>

(R. 23) (emphasis added). In brief, the ALJ accorded substantial weight to the State agency physician's and psychologists' opinions. Those opinions stated that Plaintiff would have <u>exactly</u> the same limitations as the hypothetical individual in Plaintiff's counsel's hypothetical to the VE. In turn, the VE expressly testified that a person with those limitations would not be capable of performing any work.

---

[4]This statement is incorrect, as sitting was actually limited to six hours and standing/walking to two hours, but the undersigned believed this was a simple typographical error, as the ALJ corrected it in his RFC.

Defendant argued in the prior case that the ALJ's hypothetical did incorporate all of the mental limitations found by State agency psychologist Dr. Goots, because Dr. Goots "concluded that Plaintiff retained the capacity to understand and follow simple, routine instructions." (Defendant's brief at 12). The undersigned United States Magistrate Judge disagreed. First, Dr. Goots also concluded Plaintiff would need "initial supportive supervision" (R. 161). The ALJ did not include even this in his hypothetical to the VE. Second, Dr. Goots reiterated in his functional capacity assessment that Plaintiff's severe mental impairments of borderline intellectual functioning and personality disorder did result in the "functional limitations" he listed earlier in his report. The ALJ in turn found these "functional limitations" well supported and accorded them substantial weight. Yet he did not include those limitations in his RFC or in his hypothetical to the VE. The undersigned in particular found that the ALJ's limitation that Plaintiff would be limited to "routine repetitive tasks, entry-level work," said nothing about Plaintiff's limited ability to work in coordination with or proximity to others without being distracted by them; his limited ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and his limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, which were the very same limitations the VE explained would preclude all work.

The first ALJ found all the limitations supported by the record. Yet he did not include them in his hypothetical to the VE. When "questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record on the claimant's impairment." English v. Shalala,

10 F.3d 1080, 1085 (4th Cir.1993) (citing Walker v. Bowen, 876 F.2d 1097, 1100 (4th Cir.1989)).

If the ALJ poses a hypothetical question that accurately reflects all of the claimant's limitations, the VE's response thereto is binding on the Commissioner. Edwards v. Bowen, 672 F. Supp. 230, 235 (E.D.N.C. 1987). The reviewing court shall consider whether the hypothetical question "could be viewed as presenting those impairments the claimant alleges." English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993).

The undersigned found in the prior case that the ALJ's hypothetical to the VE did not include all of Plaintiff's limitations that were supported by the record. Further, when a hypothetical including those limitations was presented to the VE, he testified that there would be no jobs available.

The undersigned therefore found that substantial evidence did not support the ALJ's RFC determination, his hypothetical to the VE, or his reliance on VE's testimony in response to that hypothetical in determining that Plaintiff was capable of performing work that existed in significant numbers in the national economy.

Additionally, although not argued by Plaintiff, the undersigned noted that the examining psychologist opined Plaintiff had an additional diagnosis of personality disorder, NOS, with avoidant and dependent features (R. 146). Both Dr. Goots and Dr. Capage also opined Plaintiff had an additional severe impairment of Personality Disorder. A review of the decision, however, revealed that the ALJ totally failed to address this impairment. The undersigned found this an additional reason substantial evidence did not support the ALJ's determination, thus requiring remand to the Commissioner.

The undersigned again emphasizes there were no objections filed to the Report and

Recommendation. On January 25, 2005, The Honorable W. Craig Broadwater, United States District Judge, noted that there had been no objections filed to the R&R. After review, Judge Broadwater ORDERED the Report and Recommendation adopted. He denied Defendant's Motion for Summary Judgment and Granted Plaintiff's Motion for Summary Judgment in part, remanding to the Commissioner for further proceedings consistent and in accord with the Report and Recommendation.

On February 22, 2005, the Appeals Council vacated the Commissioner's decision and remanded the case to an ALJ for further proceedings consistent with the Court's order.

The subsequent ALJ, Karl Alexander, took additional evidence, held another Administrative Hearing, on November 10, 2005, and issued a decision finding Plaintiff not disabled on April 3, 2006 (R. 589). The Appeals Council refused to review the decision, and Plaintiff timely filed his [new] Complaint in this Court.

## II. Evidence after December 2002

On August 20, 2003, Plaintiff saw orthopedic surgeon P. Kent Thrush, M.D. for a follow up of his knee impairments (R. 780). Range of motion was 3 to 105 degrees on the left and 3 to 100 degrees on the right. Plaintiff had mild crepitation of both knees, with no deformity or swelling. X-rays showed moderate arthritis in both knees, worse on the left, with joint space narrowing and joint space irregularity. Dr. Thrush found there was still some cartilage space left, and thought Plaintiff too young for full knee replacement at that time. Dr. Thrush wanted x-rays of the spine, but could not do it in his office, because Plaintiff was "too big" for the x-ray machine. He opined that Plaintiff had degenerative arthritis of the knees and degenerative arthritis and degenerative disc disease of the thoracic and lumbar spine.

Subsequent spine x-rays showed very mild scoliosis, with degenerative changes and tiny spurs present off the disc margins. There was disc space narrowing at L4-L5 and L5-S1 and mild degenerative changes in the facet joint at L4-5 (R. 781-782).

One year later, on August 18, 2004, Dr. Thrush noted that Plaintiff was "hanging in there with his knees" (R. 780). He found that Plaintiff now had moderately advanced arthritis in both knees, worse on the left. He walked with a slight limp. Dr. Thrush opined that because of his age, Plaintiff should still just continue his medications, instead of undergoing total knee replacement.

Plaintiff underwent a Mental Status Examination at the request of the Disability Determination Service ("DDS") on October 28, 2004 (R. 784). The evaluation was performed by Peggy Allman, M.A. Ms. Allman noted that Plaintiff was 47 years old, 5'4" tall, and weighed 255 pounds (R. 786). He was appropriately and cleanly dressed; attitude and cooperation were within normal limits; and posture was unremarkable. Plaintiff had a limp in both legs. He had some difficulty getting up after sitting for a while and appeared to be stiff. Plaintiff stated he had applied for benefits because he had arthritis in both knees and his back, as well as scoliosis. Ms. Allman noted Plaintiff's IQ scores of 72 full scale, 72 verbal and 77 performance from past tests, and past tests indicating he read at the 5th grade level and spelled and performed math at the 2nd grade level.[5] He was assessed with a mathematics disorder, personality disorder, NOS with avoidant features, and

---

[5]Although not noted in the undersigned's first R&R, a review of the record shows that Plaintiff was retained in the first, second, and fourth grades. In other words he went to first grade, first grade, second grade, second grade, third grade, fourth grade, fourth grade, fifth grade, sixth grade. He still made mostly D's and E's and F's in his classes. At the end of sixth grade he was 15 years old. Although there is no evidence in the record, Plaintiff told Ms. Allman he saw a therapist as a child.

Borderline Intellectual Functioning. His GAF was assessed as 50.[6]

Plaintiff stated he had worked at Select Pastries from 1978 to 1983, but left the job because he "couldn't get along with the worker." He had gotten the job because his brother knew the owner and his brother's wife also worked there. As noted in the prior R&R, Plaintiff stated he left the job in 1983 because "he did not 'like it there.'" He consistently stated and testified that he had had a conflict with a coworker, who also happened to be his brother's wife. He consistently stated and testified that his brother's wife worked with him at the bakery, and she was having an affair with their boss while she was still married to his brother. Instead of confronting her or his boss, or telling his brother, he quit the job. He reported getting along well with coworkers and supervisors otherwise. Plaintiff had always been single and had always lived with his mother. He had no children. He did not obtain a GED. He had never obtained a driver's license.

Upon Mental Status Examination, Plaintiff had good hygiene and grooming. He had a positive attitude and was cooperative. He interacted with Ms. Allman within normal limits. He had good eye contact and adequate verbal responses, and had a sense of humor. His speech was relevant and coherent with good pace. He was fully oriented, his mood was happy and his affect was broad. His insight was limited and his judgment within normal limits. Immediate memory was moderately deficient and recent memory was severely deficient. Concentration "as measured by serial 3's was severely deficient as he stated he could not do it." (R. 786).

---

[6] A GAF of 41-50 indicates **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job). Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 1994). (Emphasis in original).

Ms. Allman diagnosed mathematics disorder, specific phobia (heights, small spaces and spiders), generalized anxiety disorder, and borderline intellectual functioning.

On November 19, 2004, State agency reviewing psychologist Frank D. Roman completed a Mental RFC opining that Plaintiff would be moderately limited in his ability to understand, remember, and carry out detailed instruction, and to accept instructions and respond appropriately to criticism from supervisors. (R. 791-792). He was not significantly limited in any other functional area. Dr. Roman opined that Plaintiff could perform activities of daily living independently and follow routine repetitive work activities in a low stress setting (R. 793).

Dr. Roman also completed a Psychiatric Review Technique ("PRT"), finding Plaintiff had a mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. He had had no episodes of decompensation, each of extended duration. Dr. Roman noted that the medical and non-medical evidence in Plaintiff's case appeared partially credible, "supported by impaired MSE concerning memory & concentration & BIF scores. Not fully consistent with ALJ. However, function report indicates difficulty with with [sic] completing tasks, following directions, & concentration." He then stated that Plaintiff appeared credible based on the examination, but that his primary limitations appeared to be physical (R. 809) (emphasis added).

On October 30, 2004, State agency reviewing physician Fulvio Franyutti completed an RFC, finding Plaintiff could stand/walk two hours in an eight-hour workday, and could sit about six hours in an eight-hour workday (R. 812). He could "occasionally" perform posturals, must avoid concentrated exposure to temperature extremes, and avoid even moderate exposure to hazards (R. 815).

Dr. Franyutti then also noted that <u>the medical and non-medical evidence was credible, as supported by Plaintiff's restricted ROM's, limping gait, and degenerative arthritis on x-rays, which were all consistent with his restricted activities of daily living, complaints of constant pain, and complaints of difficulty with motion, lifting, and completing tasks.</u> (R. 818)(emphasis added).

Psychologist Allman completed a second Mental Status Examination on May 19, 2005, for the DDS (R. 821). Plaintiff's attitude and cooperation were both within normal limits and he was polite and articulate. His posture was unremarkable, but his gait was slow and stiff when first getting up from a chair. He stated he was applying for benefits because he had arthritis in both knees, arthritis in his back, and curvature of the spine. All results of the MSE were the same as in Ms. Allman's earlier examination, except she found both his immediate and recent memory very deficient. He again would not attempt serial three's telling Ms. Allman he would not be able to do it. Ms. Allman therefore judged his concentration to be severely deficient.

Ms. Allman diagnosed specific phobia, mathematics disorder, generalized anxiety disorder, and borderline intellectual functioning. His prognosis was "poor."

On June 16, 2005, Plaintiff underwent a Physical Examination for the DDS, performed by Silvina Padro, M.D. (R. 826-827). Dr. Padro found Plaintiff was morbidly obese. He walked with an antalgic gait, but without an assistive device. He had some trouble getting on and off the examining table. He was able to walk on his toes with difficulty. He was not able to walk on his heels. He could not squat down secondary to knee pain. Back examination showed scoliosis. There was paraspinal tenderness at the lumbar level. There was no swelling or erythema of the knees and no tenderness on palpation. There was pain on passive and active range of motion. Plaintiff's blood pressure was 144/110, which Dr. Padro found to be high, and referred him to his primary care

physician. Dr. Padro also found Plaintiff was morbidly obese, had osteoarthritis of the knees, chronic low back pain with scoliosis, with complaints of severe knee pain and back pain, unable to stand or walk for long periods of time. Dr. Padro also noted Plaintiff was diagnosed with borderline intellectual functioning and a personality disorder.

X-rays ordered by Dr. Padro showed degenerative process of both knees, and degenerative process involving the lumbar spine (R. 83).

On May 23, 2005, Dr. Thrush wrote that Plaintiff had moderate arthritis in both knees, and degenerative arthritis and degenerative disc disease of the thoracic and lumbar spine (R. 831). He had difficulty walking, standing, lifting, and bending, but had, to date, been treated conservatively.

Plaintiff saw his primary care physician on the advice of Dr. Padro due to the finding of high blood pressure (R. 832). Plaintiff told his regular physician he though he was just excited when he was evaluated by Dr. Padro, and that was the reason for the high blood pressure. On this date, his blood pressure was 180/90. The doctor referred Plaintiff to a surgeon for a large lesion of the forehead which had been present for many years (R. 834). It was asymptomatic. The surgeon saw him, but advised his doctor that Plaintiff "d[id] not want to do anything to it for a variety of reasons."

At the Administrative Hearing, the following colloquy took place between Administrative Law Judge Alexander ("ALJ") and Plaintiff's Counsel("ATTY"):

ATTY:       B6F was a mental residual functional capacity form completed by Sam Goots and Dr. Paige.

ALJ:        Right.

ATTY:       And indicated the need for initial supportive supervision. When that, that combination of physical and mental limitations was presented to the VE in that hearing - -

ALJ:        Right.

14

ATTY:    - - he testified no jobs. So Your Honor our theory is basically just as in the last case that when you combine the severely reduced physical RFC with the mental limitations that have already confirmed by VE testimony to indicate no jobs that this gentleman's overall residual functional capacity has been completed eroded.

ALJ:     Okay. I will just add one thing there and I don't intend to get into a full scale argument about it but those check marks on those mental RFC's are not of functional capacity, Part III is the functional capacity and in, I think that in Exhibit B6F the person concluded that the claimant would be capable of performing some, some type of simple unskilled work and therefore I don't typically put a lot of weight in those moderate check marks, mild, moderate or whatever they are.

ATTY:    I understand, Your Honor.

ALJ:     Yeah.

ATTY:    And I also - -

ALJ:     Yeah, see that's an ongoing debate I think about those, that particular document.

ATTY:    I agree with you there. The only thing I would point out very briefly in this particular instance Your Honor is that in this case we've had the district court review this very issue and it appears that they have indicated that, that hypothetical was an appropriate hypothetical question and not only that they went one step further in reading the report and recommendation affirmed by the Federal Court Judge that he found it appropriate to consider and even specifically cited Dr. Goots' opinion that those were in fact functional limitations and it was appropriate to consider that so that would be our position in this case Your Honor.

(R. 840-842).

The ALJ then asked the VE a hypothetical for a person of Plaintiff's age, education, and work history, with the additional limitations that the work would have to be at the sedentary exertional level; with a sit/stand option; only occasional postural movements; with no kneeling, crawling, or climbing; and no exposure to temperature extremes, dampness or humidity. The work should be low stress with no production-line-type of pace or independent decision-making responsibilities and would be limited to unskilled work involving only routine and repetitive instructions with no requirements to perform any math and no more than occasional interaction with others.

In response to the hypothetical the VE testified that the individual could perform the jobs of waxer of glass products, sorter/grader, inspector/checker, and assembler (R. 859).

Plaintiff's counsel then asked the VE a hypothetical wherein the individual would be limited to a less-than-sedentary job physically, with the additional mental limitations, all from Dr. Goots' Mental RFC:

ATTY:    The person would have the ability to maintain attention and concentration for extended periods is moderately limited, ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances is also moderately limited. Their ability to sustain an ordinary routine without special supervision was moderately limited. Their ability to work in coordination or proximity to others without being distracted by then is moderately limited. The person's ability to complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods is again moderately limited. Now based on that hypothetical you've heard my comments to the Judge regarding the prior testimony. Do you agree or disagree with the prior testimony?

VE:      Prior testimony being?

ATTY:    That there were no jobs in response to this hypothetical.

VE:      All the moderation [sic] limitations just indicated?

ATTY:    Combination, I think what we - -

VE:      Combination.

ATTY:    - - have is a combination of what would equate to a sedentary RFC?

VE:      Right.

ATTY:    And then those additional mental limitations.

VE:      Well I'll try to answer as best I can.

ATTY:    Sure.

VE:      Basically moderate is kind of a gray area but with the combination of being easily distracted around coworkers, having impairments in maintaining a work schedule,

16

being dependable as far as punctuality and requiring more than the necessary supervision, more than the normal supervision the combination of those could affect the person's ability in my opinion to sustain competitive work as I understand and have experienced it with workers. As I said independent functioning is the essential requirement of competitive work.

ATTY:     Okay. So would you be able to name jobs that were available for a person with these types of limitations?

VE:       There would be jobs available, whether he could sustain them or not is my question. I would say he can probably qualify for them but there are sedentary jobs that a person with a limited education could perform based on his ability but with these impairments as stated even though they are all classified as you indicated as moderate in my opinion the combination of them would probably affect the person's ability to perform these jobs satisfactorily for most employers in a competitive labor force.

(R. 861-862).

### III. The Second ALJ Decision

In his Decision, Administrative Law Judge Alexander discusses Dr. Goots' findings as follows:

In the claimant's case, on October 7, 2002, Dr. Goots, a state agency psychological consultant, submitted an assessment, which was later affirmed by a second state agency psychological consultant on January 13, 2003. In the summary conclusions portion of the assessment form, Dr. Goots opined that the claimant was "moderately limited" with regard to the following: the ability to understand and remember detailed instructions, the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities with a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. In Section III, the functional capacity assessment portion of the form, Dr. Goots referred to his Psychiatric Review Technique form submitted on October 7, 2002. He indicated that the claimant had a severe impairment which did not meet or equal the Listings but which resulted in the functional limitations contained in the summary conclusions portion of the assessment form. Dr. Goots then opined that the claimant retained the capacity to understand and follow simple, routine instructions with initial supportive supervision (Exhibit B6-F).

17

In the hearing decision dated April 22, 2003, the Administrative Law Judge concluded that the opinions expressed by Dr. Goots in the summary conclusions and functional capacity assessment portions of the assessment form were well supported by medically acceptable clinical and laboratory diagnostic techniques and entitled to substantial weight. However, in the residual functional capacity finding in the hearing decision the Administrative Law Judge found that the claimant's only mental limitation was that he was limited to performing repetitive tasks at entry level jobs (Exhibit B-4A). In the Report and Recommendation, the Magistrate Judge found that this limited finding was inconsistent with the assessment submitted by Dr. Goots, as this consultant reiterated in his functional capacity assessment that the claimant's impairment resulted in the "functional limitations" he listed earlier in his report. The Magistrate Judge further noted that the Administrative Law Judge had found these "functional limitations" well supported and accorded them substantial weight. The Magistrate Judge found that the Administrative Law Judge should have included the functional limitations in his hypothetical question to the vocational expert, and noted that when these functional limitations were given to the vocational expert in a hypothetical propounded by the claimant's counsel, the vocational expert opined that the would preclude all work. The Magistrate Judge found that the Administrative Law Judge's hypothetical to the vocational expert did not include all the claimant's limitations that were supported by the record (Exhibit B-7A).

Based on the above-detailed description of the format of the assessment form completed by the state agency psychological consultant and the provision of Social Security Ruling 96-8p, the Administrative Law Judge does not agree that Dr. Goots' reference to the functional limitations rating in Part 1 of the assessment in the functional capacity assessment portion of the form was meant to be an incorporation by reference of all of these functional limitations into his functional capacity assessment. As detailed above, the explanation of the summary conclusion portion of the assessment form provides that after rating the mental activities the consultant is to provide a detailed explanation of the degree of limitation for each category in the residual functional capacity assessment portion of the form. In the claimant's case, the undersigned concludes that Dr. Goots' opinion that the claimant retained the capacity to understand and follow simple, routine instructions with initial supportive supervision is his detailed explanation of the degree of limitation for each category of mental activity considered in the summary conclusions. The undersigned notes that in the functional capacity assessment portion of the form Dr. Goots also referred to his Psychiatric Review Technique form dated October 7, 2002 (Exhibit B-7F). In this Psychiatric Review Technique form, Dr. Goots also rated the functional limitations associated with the claimant's mental impairments in the "paragraph B" portion of the form, opining that the claimant had moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace (Exhibit B-7F). In this regard, Social Security Ruling 96-8p provides that the limitations identified in the "paragraph B" portion of the Psychiatric Review Technique form are not a residual functional capacity

assessment but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. This ruling further provides that the mental residual functional capacity assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in Section 12.00 of appendix 1, as summarized on the Psychiatric Review Technique forms. The undersigned finds that this same, more detailed assessment is required of a consultant when completing the mental residual functional assessment as the consultant is expressly required to provide a detailed explanation for the rating contained in the summary conclusion portion of the form. The undersigned finds that this conclusion is also supported by the requirement of Social Security Ruling 96-8p that a claimant's non-exertional capacity must be expressed in terms of work-related function. In this regard, this ruling provides that work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, remember, and carry out instructions; use judgment in making work-related decisions; respond appropriately to supervision, coworkers and work situations; and deal with changes in a routine work setting. The undersigned finds that the claimant's detailed work-related mental limitations were expressed by Dr. Goots when he opined that the claimant retained the capacity to understand and follow simple, routine instructions with initial supportive supervision.

The Administrative Law Judge finds that the specific work-related limitations opined by Dr. Goots and the affirming state agency psychological consultant are generally supported by the longitudinal record and that the above-detailed limitations are consistent with their opinions. In this regard, the undersigned has limited the claimant to unskilled work involving routine and repetitive instructions and has provided the further limitation that the work require no mathematics. Further, consistent with the need for initial supportive supervision, the undersigned has limited the claimant to work in a low stress environment that requires no production line type pace or independent decision making responsibilities. The Administrative Law Judge notes in passing that the point of the "initial supportive supervision" proviso is not entirely clear. The undersigned has never heard of any job in which a new employee is simply thrown into the workplace without being told what to do and overseen until he is doing the job properly.

The medical records also contain a mental residual functional capacity assessment form submitted by a state agency psychological consultant on November19, 2004, with this assessment affirmed by a second consultant on February 28, 2005. After making the summary conclusions, the consultant opined that the claimant was able to follow routine, repetitive work activities in a low stress setting (Exhibit B-13F). The undersigned finds that these opined limitations are consistent with the finding that the claimant is limited to the range of unskilled, low stress work detailed above.

(R. 585-587)(emphasis added).

Regarding Plaintiff's counsel's hypothetical to the VE, containing all of the "functional limitations" found by Dr. Goots, the ALJ stated:

> On cross examination, the claimant's representative asked the vocational expert if he agreed with the testimony of the prior vocational expert that the moderate functional limitations opined by Dr. Goots would preclude the performance of any jobs. The vocational expert responded that "moderate" is a "gray area." He testified that there would be jobs available, but expressed the opinion that these functional limitations would affect the claimant's ability to do the jobs. The Administrative Law Judge <u>does not accept this testimony as the vocational expert's response was to a hypothetical question did not express the claimant's non-exertional, mental capacity in terms of work-related functions.</u> Instead, the question posed by the claimant's representative requires that the expert give a response based on his subjective conclusion of what constitutes a "moderate" limitation, which he admitted is a "gray area."

(R. 589) (Emphasis added).

## IV. Discussion

The undersigned United States Magistrate Judge generally agrees with the Administrative Law Judge's interpretation of the Mental Residual Functional Capacity Assessment. The form itself does, in fact, provide:

> I.      Summary Conclusions
>
> This section is for recording summary conclusions derived from the evidence in file. Each mental activity is to be evaluated within the context of the individual's capacity <u>to sustain that activity over a normal workday and workweek, on an ongoing basis. Detailed explanation of the degree of limitation for each category (A through D), as well as any other assessment information you deem appropriate, is to be recorded in Section III (Functional Capacity Assessment).</u>
> . . . .
> III.     Functional Capacity Assessment
>
> Record in this section <u>the elaborations</u> on the preceding capacities. Complete this section ONLY after the SUMMARY CONCLUSIONS section has been completed. <u>Explain your summary conclusions in narrative form. Include any information which clarifies limitation or function</u> . . . .

20

(Emphasis added).

The undersigned notes once again that, Dr. Goots found, in his Summary Conclusions, that Plaintiff would be moderately limited in his ability to understand and remember detailed instruction; carry out detailed instructions, maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

The undersigned United States Magistrate Judge has rarely, if ever, required the Administrative Law Judge to incorporate all of the functional limitations found in a State agency expert's (or any doctor's), Summary Conclusions into his RFC or hypothetical to the VE. There was a significant difference in Plaintiff's case, however. In the Functional Capacity Assessment (described as the explanation of his summary conclusions in narrative form) Dr. Goots wrote: "He has a severe impairment which does not meet or equal the listing but which results in the functional limitations noted in Parted I above." Dr. Goots himself therefore incorporated his Summary Conclusions into his RFC, and even referred to the limitations in Section I as "functional limitations."

The undersigned United States Magistrate Judge found, in the prior case, that the ALJ had accorded substantial weight to the "functional limitations" found by Dr. Goots. The VE was given a hypothetical including those precise limitations. He testified that given those limitations, there would be no jobs.

It is clear from Administrative Law Judge Alexander's decision that he does not agree with the undersigned's finding regarding this issue. As already noted, however, there were no objections by either party to the prior Report and Recommendation. The District Judge Adopted and Affirmed the Report and Recommendation. There was no appeal of the District Judge's decision. The undersigned United States Magistrate Judge will therefore not revisit the issue of whether or not Dr. Goots' Summary Conclusions were meant by him to be "functional limitations," which is precisely what Dr. Goots called them.

At the fifth step of the sequential evaluation, "the burden shifts to the [Commissioner] to produce evidence that other jobs exist in the national economy that the claimant can perform given his age, education, and work experience." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). The ALJ must consider the claimant's RFC, "age, education, and past work experience to see if [he] can do other work." 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

The ALJ may rely on VE testimony to help determine whether other work exists in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1566(e), 416.966(e). The Fourth Circuit has held that "[t]he purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which the particular claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). When "questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record on the claimant's impairment." English v. Shalala, 10 F.3d 1080, 1085 (4th Cir.1993) (citing Walker v. Bowen, 876 F.2d 1097, 1100 (4th Cir.1989)).

If the ALJ poses a hypothetical question that accurately reflects all of the claimant's

limitations, the VE's response thereto is binding on the Commissioner. Edwards v. Bowen, 672 F. Supp. 230, 235 (E.D.N.C. 1987). The reviewing court shall consider whether the hypothetical question "could be viewed as presenting those impairments the claimant alleges." English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993).

Dr. Goots, a State agency expert psychologist, himself incorporated his "Summary Conclusions" into his RFC, even referring to them as "functional limitations." ALJ Alexander then found that Dr. Goots' "specific work-related limitations" were generally supported by the record. He did not disagree with any of the findings in the "Summary Conclusions" The undersigned once again finds those limitations should therefore have been included in a hypothetical to the VE.

When asked a hypothetical including all of the mental functional limitations included in Dr. Goots' RFC, the first VE testified there would be no jobs. The second VE testified that there would be jobs available, but "with these impairments as stated even though they are all classified as you indicated as moderate in my opinion the combination of them would probably affect the person's ability to perform these jobs satisfactorily for most employers in a competitive labor force." (R. 862). "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." The undersigned finds the second VE's testimony indicates that although Plaintiff may have been able to get a job, he would not be able to sustain it in a work setting eight hours a day, five days a week.

ALJ Alexander did not dispute that Plaintiff had any of those limitations, only that they did not need to be included in his RFC, and that the VE's response "was to a hypothetical question [that] did not express the claimant's non-exertional, mental capacity in terms of work-related functions."

The undersigned does not agree.

The undersigned therefore finds ALJ Alexander's RFC and his hypothetical to the VE are not supported by substantial evidence.

The undersigned United States Magistrate Judge gave the Commissioner the benefit of the doubt in his previous Report and Recommendation. Although the undersigned found that the mental functional limitations should have been included in the hypothetical, and found that, when they were included, the VE testified no jobs would be available, the Commissioner was given an opportunity to explain what the undersigned called "an inconsistency." In response, the Appeals Council vacated ALJ Levine's prior decision and remanded to the ALJ for a new hearing and decision. ALJ Alexander also gave substantial weight to Dr. Goots' Mental RFC which, by its own terms incorporated his "summary conclusions" or, as the psychologist referred to them, "functional limitations," from Part I of the form.

The undersigned therefore is compelled to find that substantial evidence does not support the ALJ's determination that there are jobs available that Plaintiff could perform, and his ultimate conclusion that Plaintiff was not disabled at any time prior to the date of his decision. In light of the fact that this same issue has been heard and decided twice, and the determination has remained the same – that there are no jobs Plaintiff could perform on a regular and continuing basis, the undersigned believes that a remand for further evidence or hearing would serve no useful purpose. The undersigned therefore respectfully RECOMMENDS this matter be REMANDED to the Commissioner solely for a computation and award of benefits.

Because this issue is dispositive as to the case, the undersigned does not address Plaintiff's final argument.

# V. RECOMMENDED DECISION

For the reasons above stated, I find that substantial evidence does not support the Commissioner's decision denying Plaintiff's application for Supplemental Security Income. I accordingly respectfully **RECOMMEND** Defendant's Motion for Summary Judgment [Docket Entry 18] be **DENIED**, and Plaintiff's Motion for Summary Judgment [Docket Entry 15] be **GRANTED** by reversing the Commissioner's decision under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), with a remand of the cause to the Commissioner for computation and award of benefits.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation for Disposition to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 2 day of August , 2007.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE